UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MAYRA RIVERA,

    Plaintiff,

v.                                         CASE NO. 3:18-cv-886-J-MCR

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

    Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Following an administrative hearing held on August 3, 2017, the assigned Administrative Law Judge ("ALJ") issued a decision, finding Plaintiff not disabled from November 18, 2013, the alleged disability onset date, through August 22, 2017, the date of the decision.[2] (Tr. 17-77.) Based on a review of the record, the briefs, and the applicable law, the Commissioner's decision is **AFFIRMED**.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 17.)

[2] Plaintiff had to establish disability on or before December 31, 2018, her date last insured, in order to be entitled to a period of disability and DIB. (Tr. 20.)

1

## I. Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II. Discussion

Plaintiff raises two issues on appeal. First, she argues that the ALJ did not properly evaluate the opinion of her treating physician, Tanam Ahmed, M.D., that

Plaintiff would be unable to sustain work activity on a regular and continuing basis
due to chronic pain syndrome. Second, she argues that the ALJ's findings at
step two of the sequential evaluation process[3] concerning Plaintiff's diagnoses of
bipolar disorder and post-traumatic stress disorder ("PTSD"), were not supported
by substantial evidence. Defendant responds that substantial evidence supports
the ALJ's evaluation of the medical opinion evidence and his findings as to
Plaintiff's bipolar disorder and PTSD.

### A. The ALJ Properly Evaluated Dr. Ahmed's Opinion

#### 1. Dr. Ahmed's Opinion

On April 11, 2014, Dr. Ahmed filled out a Treating Source Mental Status
Report,[4] in which she opined that Plaintiff's mood and affect were "within normal
limits, [but] sometimes worsen[ed] intermittently due to pain"; her thought process
was "within normal limits"; her concentration and memory were "intact"; and her
mental status was otherwise normal. (Tr. 425-27.) Dr. Ahmed diagnosed Plaintiff
with anxiety and depression, and noted that her prognosis was "fair, given
triggers at times due to chronic pain (referred at last visit to pain management)."
(Tr. 426.) Dr. Ahmed opined that Plaintiff was able to perform activities of daily
living and to mange her funds, but was incapable of sustaining work activity for

---

[3] The Commissioner employs a five-step process in determining disability. See
20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[4] Although this report was signed on April 11, 2014, Dr. Ahmed last examined
Plaintiff on February 25, 2014. (Tr. 427.)

3

eight hours a day, five days a week, "due to chronic pain syndrome, currently suspects [sic] fibromyalgia, is [sic] going to see pain management soon." (Tr. 427.)

## 2. The ALJ's Decision

At step two of the sequential evaluation process, the ALJ found that Plaintiff's severe impairments included a history of hypertension, hyperlipidemia, non-insulin dependent diabetes, depression, hypothyroidism with a stable thyroid nodule, and mild multi-level degenerative disc and joint disease of the cervical spine. (Tr. 22.) Then, at step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 23-25.)

Before proceeding to step four, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a reduced range of light work, as follows:

> [Plaintiff] can sit, stand and walk for at least six hours each per eight-hour workday; lift and/or carry up to 10 pounds frequently and 20 pounds occasionally; occasionally use [] hand, arm or foot/pedal controls with her upper or lower extremities; she can occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; occasional[ly] balanc[e], stoop[], kneel[], crouch[] and crawl[]; frequent[ly] reach[] in all directions, handl[e], finger[] and feel[] with the upper extremities; no limitations on seeing, speaking or hearing; she should not work at unprotected heights or around dangerous moving machinery or in proximity to concentrated industrial vibration; [and] she should work in a clean air environment without exposure to temperature extremes. She can interact with the public, supervisors and coworkers frequently; she should have no job requiring her to

meet a strict production goal or quotas[,] such as assembly work[,] and she is able to perform both unskilled and semi-skilled work.

(Tr. 25.) This RFC was "assessed based on all the evidence[,] with consideration of the limitations and restrictions imposed by the combined effects of all [of Plaintiff's] medically determinable impairments." (*Id.*)

The ALJ gave little weight to Dr. Ahmed's conclusion that Plaintiff would be unable to sustain work activity on a regular and continuing basis due to pain syndrome, because this conclusion was "inconsistent with the medical evidence of record and with Dr. Ahmed's own treatment notes." (Tr. 29.) The ALJ added: "The remainder of the Mental Source Statement indicates that the claimant's mental status examinations show results within normal limits and it states that the claimant is able to manage money and her activities of daily living independently. The latter conclusions are generally consistent with the record and were given significant weight[.]" (*Id.*)

In determining the RFC, the ALJ noted that "Dr. Ahmed's records show[ed] conservative treatment primarily in the form of medication management and monitoring." (Tr. 26.) According to more recent progress notes from Dr. Ahmed, Plaintiff "discontinued the medication prescribed for her alleged fibromyalgia pain and symptoms due to side effects" and she "reported improvement in her symptoms with diet and the use of herbal medications and vitamins." (*Id.*) Also, "[a] more recent physical assessment, in July 2016[,] was unremarkable for any

musculoskeletal, psychiatric or neurological deficits." (*Id.*)

The ALJ also stated:

> The claimant sought some pain management in June 2014, at which time her exam was fairly benign with no neurological deficits and only some moderate range of motion limitations. She was placed on Tramadol, but later informed Dr. Ahmed that she had discontinued her pain management treatment in favor of continuing with chiropractic treatment, which was helping with her pain issues. As of September 2016, she reported that she was "doing better overall." She was advised to return as needed. At the hearing, the claimant said she ha[d] not recently undergone additional chiropractic treatment, which [was] consistent with her reported improvement in 2016 (testimony; Exhibits 5F, 6F, 11F-13F and 17F).

(*Id.*)

In addition, the ALJ addressed the results of the diagnostic tests as follows:

> Notable objective results include an MRI of the cervical spine from June 2014, which show[ed] relatively mild multilevel degenerative disc and joint disease from C3-4 to C6-7 (Exhibits 5F and 10F) and MRIs of the bilateral knees from January 2015, which showed some degenerative changes in the medial meniscus and ossification within the patellar tendon on the left and tearing and cartilage defects, as well as a tiny Baker's cyst, on the right (Exhibit 7F). A November 2015 thyroid ultrasound showed a stable and benign thyroid nodule (Exhibit 10F). August 2016 imaging studies of the thoracic spine, left shoulder and left hand show[ed] osteopenia and mild degenerative changes (Exhibit 17F).

(Tr. 26-27.)

After considering the RFC assessment and the testimony of the vocational expert, the ALJ determined at step four that Plaintiff was capable of performing her past relevant work of a waitress, as actually and generally performed, and a food sales clerk, as generally performed in the national economy. (Tr. 29-30.)

6

### 3. Analysis

The Court finds that the ALJ gave specific reasons, supported by substantial evidence, for according little weight to Dr. Ahmed's conclusion that Plaintiff was incapable of sustaining work activity for eight hours a day, five days a week, due to chronic pain syndrome. (Tr. 427.) First, Dr. Ahmed's conclusion was inconsistent with her treatment notes. As the ALJ observed, Dr. Ahmed's records show conservative treatment, primarily in the form of medication management and monitoring, and include references that Plaintiff discontinued various medications. (*See* Tr. 365-67 (noting that Plaintiff was using Ibuprofen for chronic pain and has not been to pain management or rheumatology as of February 25, 2014); Tr. 533 (using Ibuprofen when needed for pain as of February 17, 2016); Tr. 565 (using Ibuprofen when needed for pain as of July 14, 2016); Tr. 576 (using Ibuprofen when needed for pain as of October 13, 2016); Tr. 619 (using Ibuprofen when needed for pain as of January 18, 2017); Tr. 637 (using Ibuprofen when needed for pain as of June 21, 2017); *see also* Tr. 506, 513, 518, 520, 548.) As reflected in these records, Plaintiff reported symptom improvement with diet, herbal supplements, and vitamins in the fall of 2015. (*See* Tr. 520-22, 527.)

Further, the results of the diagnostic tests seemed inconsistent with Dr. Ahmed's conclusion that Plaintiff was incapable of sustaining work activity due to chronic pain. (*See* Tr. 438 (noting that the cervical MRI from June 13, 2014

7

showed a degenerated disc with small annular bulges and osteophytic ridging at C4/5, C5/6, and C6/7); Tr. 451-52 (noting that the right knee MRI from January 3, 2015 showed a horizontal obliquely oriented tear extending from the undersurface of the medial meniscal body into the posterior horn/body junction, subarticular edema peripherally in the medial tibial plateau, small partial thickness articular cartilage defects in the posterior weightbearing surface of the medial femoral condyle, and a tiny Baker's cyst); Tr. 449 (noting that the left knee MRI from January 15, 2015 showed a degenerative signal within the posterior horn of the medial meniscus, without discrete meniscal tear, 3 mm focus of ossification within the distal patellar tendon, and minimal anterior knee subcutaneous soft tissue swelling); Tr. 483 (noting a stable ultrasound of the thyroid, with a 7 mm benign hypoechoic nodule, mid to lower pole, left lobe, as of November 20, 2015); Tr. 592 (noting non-specific degenerative changes as reflected on the X-ray of the left hand from August 17, 2016); Tr. 593 (noting minimal degenerative changes as reflected on the X-ray of the left shoulder from August 17, 2016); Tr. 594 (noting slight dextrocurvature of the lower thoracic spine and osteopenia as reflected on the thoracic spine X-ray from August 17, 2016); *see also* Tr. 563 (noting good lab results as of July 14, 2016).)

In addition, as noted by the ALJ, Plaintiff's pain management examinations from June 2014 were fairly benign with moderate range of motion limitations and moderate tenderness to palpation in the cervical region. (Tr. 432-37.) The

8

record also reflects, consistent with the ALJ's observation, that Plaintiff discontinued her pain management treatment in favor of continuing with chiropractic treatment, which was reportedly helpful for her symptoms. (Tr. 503 (noting, on August 21, 2014, improvement in Plaintiff's pain with chiropractic treatment and reporting "a bad experience with referral to pain management"); Tr. 510-13 (noting, on October 30, 2014, that Plaintiff's pain was much better with chiropractic treatment, she was not going to pain management anymore, and in light of the MRI results, she did not need to see a neurosurgeon).) Consistent with her reported improvement, Plaintiff testified at the hearing that she had not been to her chiropractor "for a while" as she had "been doing pretty good." (Tr. 58-59; Tr. 585 (reporting improvement in symptoms as of August 24, 2016); Tr. 587 (reporting improvement in symptoms as of August 26, 2016); Tr. 589 (reporting improvement in symptoms as of August 31, 2016 and stating: "Patient is doing much better. She is happy with her progress. She can return to clinic PRN [as needed]."); Tr. 591 (noting, on September 28, 2016, that "Patient is doing much better. She is happy with her progress. She can return to clinic PRN [as needed]."); *see also* Tr. 440-47 (chiropractic records for the period October 12, 2012 to July 14, 2014), Tr. 488-501 (chiropractic records for the period September 27, 2013 to April 10, 2015), Tr. 580-91 (chiropractic records for the period August 17, 2016 to September 28, 2016).)

Based on the foregoing, substantial evidence supports the ALJ's decision

to give little weight to Dr. Ahmed's opinion that Plaintiff would be unable to sustain work activity on a regular and continuing basis due to her chronic pain. To the extent Dr. Ahmed opined that Plaintiff's mental status was within normal limits, that she was independent in her daily activities, and that she was able to manage her funds, the ALJ gave those opinions significant weight as "generally consistent with the record." (Tr. 29.) The ALJ's findings as to these opinions is also supported by substantial evidence in the record. (*See, e.g.*, Tr. 81, 104, 107, 425-27, 511-12, 518, 524, 526-27, 533, 564, 609, 611-12, 618, 622, 630, 636-37; *but see* Tr. 304 (indicating inability to pay bills or count change).)

### B. The ALJ's Findings at Step Two Are Supported by Substantial Evidence

Plaintiff argues that the ALJ's findings at step two regarding her diagnoses of bipolar disorder and PTSD were not supported by substantial evidence. The Court does not find any reversible error. In the Eleventh Circuit, "[t]he finding of any severe impairment . . . is enough to satisfy step two because once the ALJ proceeds beyond step two, he is required to consider the claimant's entire medical condition, including impairments the ALJ determined were not severe." *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 902 (11th Cir. Mar. 30, 2011). Therefore, even if the ALJ erred by not finding Plaintiff's bipolar disorder and PTSD to be severe impairments, the error is harmless because the ALJ found at least one severe impairment. *See Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x

823, 824-25 (11th Cir. 2010) (per curiam) ("Even if the ALJ erred in not indicating whether chronic pain syndrome was a severe impairment, the error was harmless because the ALJ concluded that [plaintiff] had a severe impairment: [sic] and that finding is all that step two requires. . . . Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe.").

Here, the ALJ found that Plaintiff's severe impairments included a history of hypertension, hyperlipidemia, non-insulin dependent diabetes, depression, hypothyroidism with a stable thyroid nodule, and mild multi-level degenerative disc and joint disease of the cervical spine. The ALJ acknowledged that Plaintiff sought treatment for and/or was diagnosed with a bipolar disorder and PTSD, but stated that the evidence did not show findings "supportive of the mental impairments diagnosed as per the DSM-V or SSR 12-2p and/or show that these impairments have imposed vocationally restrictive limitations for a period of 12 continuous months." (Tr. 23.) Accordingly, the ALJ found "these impairments only had a minimal effect on the claimant's ability to perform work-related activities and [were] therefore not severe within the meaning of the Regulations." (*Id.*) Nevertheless, the ALJ "considered the combined impact of both the severe and non-severe impairments in formulating the [RFC]." (*Id.*)

Then, in determining the RFC, the ALJ noted that Eneida Gomez, M.D., diagnosed Plaintiff with a bipolar disorder and PTSD, among other conditions, but gave these diagnoses "less weight than those noted by Dr. Ahmed, which [were]

more consistent with the longitudinal record and the physical and mental assessments offered by Dr. Ahmed." (Tr. 26.) The ALJ also noted Plaintiff's testimony that she "receive[d] mental health treatment at the recommendation of her primary care physician due to aggression and anxiety" and that "[h]er symptoms [had] improved with medication." (Tr. 27; Tr. 52-53; Tr. 54 ("She just increased the dosage and it seems to be better. I'm not as aggressive."); Tr. 58 (testifying that the medications prescribed by Dr. Gomez have been helpful and that Plaintiff has been taking them as directed); *see also* Tr. 28 (noting that Plaintiff had been compliant with the medications for her mental conditions, which had "resulted in stable and well-controlled symptoms"); Tr. 368, 370, 372, 374, 575, 611.) Then, the ALJ noted that Plaintiff's mental status examinations, like her physical examinations, "ha[d] shown minimal and intermittent abnormalities." (Tr. 27-28; *see also* Tr. 425-27, 511-12, 518, 524, 526-27, 533, 564, 609, 611-12, 618, 622, 630, 636-37; *but see* Tr. 379, 504-05, 521-22, 600.)

Further, the ALJ stated:

> [S]o far as [Plaintiff's] mental health is concerned, . . . the evidence in this file is relatively sparse. It does not appear that the claimant has a history of mental health treatment while residing in Puerto Rico or [has] ever been hospitalized at any mental health facility. She was apparently able to work at Publi[x] for quite some time until she was fired from her job in 2013, allegedly due to a conflict with a coworker. She was referred to Dr. Gomez in 2016 for psychiatric issues. A review of the information offered by this provider is hardly very impressive. The symptoms related by the claimant are not entirely consistent with the other information in the hearing record. More importantly, the diagnostic impressions offered by the treating

12

> psychiatrist are not congruent with the descriptions of a bipolar
> disorder or PTSD as explained and detailed in the DSM-V. The
> symptoms reported by the claimant are simply not consistent with
> these diagnoses. . . . These observations cast significant concerns
> over the treatment being offered by this medical provider. Her
> mental status exams are also inconsistent with the diagnoses
> offered. It also appears that her symptoms are judged to be stable
> on her more recent office visits.

(Tr. 28-29.)

Although Plaintiff's diagnoses of bipolar disorder and PTSD were not included in the list of severe impairments, the ALJ did not ignore these diagnoses. Importantly, however, "a 'mere diagnosis . . . says nothing about the severity of the condition.'" *Ward v. Astrue*, 2008 WL 1994978, *3 (M.D. Fla. May 8, 2008); *see also Hutchinson v. Astrue*, 408 Fed. App'x 324, 326 (11th Cir. Jan. 18, 2011) (per curiam) ("[P]roof of the mere existence of impairments does not prove the extent to which they limit a claimant's ability to work.") (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("In other words, the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality.")); *Sellers v. Barnhart*, 246 F. Supp. 2d 1201, 1211 (M.D. Ala. 2002); *McCray v. Massanari*, 175 F. Supp. 2d 1329, 1334 (M.D. Ala. 2001). Here, despite arguing that the ALJ's rejection of the two diagnoses was improper, Plaintiff does not seem to point to any greater or additional functional limitations resulting from these diagnoses, which were not accounted

for in the RFC assessment.

As shown by the ALJ's decision, he adequately considered all of Plaintiff's impairments, both severe and non-severe, in combination at subsequent steps of the sequential evaluation process. *See Tuggerson-Brown v. Comm'r of Soc. Sec.*, No. 13-14168, 572 F. App'x 949, 951-52 (11th Cir. July 24, 2014) (per curiam) ("[T]he ALJ stated that he evaluated whether [plaintiff] had an 'impairment or combination of impairments' that met a listing and that he considered 'all symptoms' in determining her RFC. Under our precedent, those statements are enough to demonstrate that the ALJ considered all necessary evidence."). Furthermore, while the ALJ considered all of Plaintiff's impairments, he incorporated into the RFC assessment only those limitations resulting from the impairments, which he found to be supported by the record. For instance, the ALJ noted that Plaintiff complained of difficulty staying focused, handling stress, and interacting with others. (Tr. 28.) Then, after consideration of the totality of the evidence, the ALJ determined that Plaintiff should be limited to jobs involving frequent interaction with the public, supervisors, and co-workers; jobs without strict production goals or quotas; and jobs that are either unskilled or semi-skilled. (Tr. 25.)

In sum, even if the ALJ erred in finding that Plaintiff's diagnoses of a bipolar disorder and PTSD were non-severe impairments, a remand is not warranted here, because the ALJ considered all of Plaintiff's impairments, both severe and

14

non-severe, in combination at subsequent steps of the sequential evaluation process and his decision is supported by substantial evidence.

### III. Conclusion

The Court does not make independent factual determinations, re-weigh the evidence, or substitute its decision for that of the ALJ. Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. Based on this standard of review, the Court concludes that the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act for the time period in question is due to be affirmed.

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **AFFIRMED**.

2. The Clerk of Court is directed to enter judgment consistent with this Order, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, on September 9, 2019.

_____
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record